Hillsborough,
No. 4687.

MERCHANTS NATIONAL BANK OF MANCHESTER, *Trustee*

*v.*

HENRY F. BERRY & *a.*

Argued December 2, 1958.
Decided January 30, 1959.

*Booth, Wadleigh, Langdell, Starr & Peters* for the plaintiff, furnished no brief.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree (Mr. Wiggin* orally), for George Berry Hamilton, individually, as administrator of Mary Hamilton and as representative of Joan and Cynthia, his minor daughters.

*Joseph J. Betley, pro se,* guardian *ad litem,* furnished no brief.

*Herbert W. Rainie* for New Hampshire Association for the Blind, furnished no brief.

*Ernest R. D'Amours,* Director of Charitable Trusts (by brief and orally), *pro se.*

*Upton, Sanders & Upton* and *Wesley E. Whitney (Mr. Whitney* orally), for First Congregational Church of Pittsfield.

LAMPRON, J.   Arthur D. Berry one of the five named legatees in said paragraph XIII (b) died before the testator leaving as his sole heir in the descending line his son Richard F. Berry.   It was held in *Merchants &c. Bank v. Berry,* 93 N. H. 388, 392, that Richard was entitled to the sum of $10,000 and "that he be given also a part of the income of five-sixths of the residue of the estate

after the sum of $50,000 has been paid and any disbursement made to Trust Fund No. 4 . . . equally with the living named beneficiaries."

Mabel R. Berry another named beneficiary also predeceased the testator but left no heirs in the descending line. It was held that "her share," determined to be the sum of $10,000 and one-sixth of the residue, should be paid into Trust Fund No. 4. *Id.*, 393.

Mary Hamilton also a named beneficiary died intestate on March 28, 1957, leaving as her sole heir, her son, George Berry Hamilton whose only potential heirs in a descending line at the present time are two minor daughters, Joan and Cynthia. Her death brought about the present petition.

George Berry Hamilton takes the position that as the only heir in the descending line living at the decease of his mother he is entitled outright to the one-sixth share of the residue of which she was receiving the income during her life. The Director of Charitable Trusts and the First Congregational Church of Pittsfield maintain that said share goes into Trust Fund No. 4. They all agree in the contention that this share becomes free of Trust Fund No. 3 at the decease of Mary Hamilton.

In said paragraph XIII of his will the testator bequeathed "All the rest, residue and remainder" of his estate. After disposing of one-sixth thereof "each of the remaining five parts . . . I hereby give and bequeath as follows: To Mabel R. Berry, Laura Offutt, Harriet Denham, Mary Hamilton and Arthur D. Berry, each the sum of ten thousand ($10,000) dollars, and also equally the net annual income of the remainder thereof quarterly during the lifetime of each of said persons, and if any of said persons die leaving heirs in the descending line, then said heirs in the descending line shall take what each of the above would have received if living at my decease."

Each of the named beneficiaries is given thereby $10,000 outright and a share of the net annual income of the remainder for life. The only way in which an heir in the descending line can "take what each of the above would have received if living at my decease," is if he replaces the named beneficiary at the death of the testator. Otherwise the heir would not receive the sum of $10,000 (payable to the designated beneficiary if living at testator's death) and thus could not and would not "take what each of the above would have received if living at my decease." Furthermore in many of the clauses of his will (II, III, V, VII, IX, XIII (a) )

the testator provided that the status of the designated beneficiary at the time of the testator's decease was determinative of the bequest. We are of the opinion that the only situation provided by the will in which an heir in the descending line of a designated beneficiary was to take a share under paragraph XIII (b) was when the designated beneficiary predeceased the testator as was the case in *Merchants &c. Bank* v. *Berry, supra.*

There is no specific provision in the will as to what disposition the testator intended to make of the share of any surviving beneficiary named in paragraph XIII (b) at the beneficiary's death, or of that of any substitute beneficiary at death. The testator's intent in this respect therefore must be determined by an examination of his will as a whole to determine what disposition is consistent with the intentions he expressed therein. See *Roberts* v. *Tamworth,* 96 N. H. 223, 227.

We agree for reasons clearly expressed in *Merchants &c. Bank* v. *Berry, supra,* 391, that the testator did not intend a partial intestacy. We also agree with the statements therein made that "according to the ordinary meaning of the language of the will, the testator divided the rest, residue and remainder of his estate into six equal parts or shares" and "the disposition of each of the six parts apparently was complete." *Id.,* 391.

It is also our opinion that the testator did not intend to create successive life estates in said residuary shares. In the other trusts which provided for the payment of a life income to certain designated beneficiaries (X, XI) there was a provision that the corpus be paid over to the ultimate beneficiary at the death of said life beneficiaries or the survivor. This pattern was intended to carry over to paragraph XIII so that at the death of each of the designated beneficiaries who survived the testator or of the substitute who replaced one of those who predeceased him that share of the residue was intended to be paid to the ultimate beneficiary free of Trust Fund No. 3.

The testator intended the corpus of the residue disposed of in paragraph XIII (b) to be distributed to one of the three classes of beneficiaries named therein. Obviously the five named individual beneficiaries could not share in the corpus of Trust Fund No. 3 because the interest of each, besides the gift of $10,000, was limited to the income of one-sixth of the Fund "during the lifetime of each of said persons."

By the specific terms of the will the "heirs in the descending

line shall take what each of the above [five named beneficiaries] would have received if living at my decease." "The idea conveyed is that the heirs in the descending line take whatever the named beneficiary would have taken at any time, provided he or she outlived the testator." *Merchants &c. Bank* v. *Berry, supra,* 392. Each named beneficiary by the specific terms of the will was to receive "each the sum of ten thousand ($10,000) dollars, and also equally the net annual income of the remainder thereof quarterly during the lifetime of each of said persons." There is no indication anywhere that the testator intended the substitute beneficiaries should receive more than those they were named to replace. By the terms of said paragraph XIII (b) the heirs in the descending line of a beneficiary were to take only if the designated beneficiary predeceased the testator and were to receive only what the named beneficiary would have taken if he or she had survived the testator.

Trust Fund No. 4 created in said paragraph is designed to benefit four distinct charities one of which was "to perpetuate the memory of my father, William H. Berry, and my mother, Laura O. Berry." This is the only provision made by the testator to honor their memory. It is reasonable to infer that he attached importance to it. He bestowed his name on that part of Fund No. 4 as well as on the other parts thereof destined to benefit three other charities. It is difficult to believe that the testator would create an elaborate trust of the nature of Fund No. 4 unless he definitely intended it to be the remainderman of Trust Fund No. 3 and we so hold. This conclusion is consistent with the tenor of the whole will in which the testator manifested an evident pattern of making in many instances outright gifts to certain named beneficiaries if they survived him and in most other cases giving life estates to designated beneficiaries with a gift over of the corpus to named charities.

It has already been decided that the share of Mabel R. Berry who predeceased the testator leaving no heirs in the descending line should be paid into Trust Fund No. 4. *Merchants &c. Bank* v. *Berry, supra.* Richard F. Berry is a substitute of the named beneficiary Arthur D. Berry who also predeceased the testator. He "takes for his life rather than for the life of the one named." *Id.,* 392. At his decease the one-sixth share of the residue of which he has been receiving the income will also be paid into Trust Fund No. 4. Upon the decease of Mary Hamilton the one-sixth share of the residue of which she had been receiving the income

during her life became payable to Trust Fund No. 4. The same disposition is to be made at the decease of Harriet Denham of the one-sixth share of which she is receiving the income for her life and the same applies to the share of Laura Offutt at her decease.

*Remanded.*

BLANDIN, J., was absent; DUNCAN, J., dissented in part; the others concurred.

DUNCAN, J., *dissenting in part:* The chief issue presented by this petition is whether the testator intended that remainder interests in four of five shares of the residue, following separate life estates therein, should go to heirs in the descending line of the respective life beneficiaries who have survived him, or to a fund for charity which he established and identified as "Trust Fund No. 4." The view adopted by the majority of the court appears to rest upon the supposition that a gift over to charity of the remainder interests in all shares of the residue must have been intended because of a "pattern" discerned in other clauses of the will which "was intended to carry over to paragraph XIII," the residuary clause.

A different view appears to me to be required by the express language of Clause XIII (b), and by the surrounding circumstances disclosed by the record. Since the testator directed that the charitable fund should take the remainder interest in any share, the life beneficiary of which should die without heirs in the descending line, the implication is that otherwise the heirs were to take the remainder. Specifically, the will provides: "If any of the above-named [life beneficiaries] leave no heirs in the descending line, then I give and bequeath his or her share to [the plaintiff], in trust, however, to be known as . . . Trust Fund No. 4 . . . . " By inference, the testator intended that if the "above-named" persons should leave heirs in the descending line, then the heirs should take the share.

Since Mary Hamilton is survived by a son, Trust Fund No. 4 clearly cannot qualify, under the quoted provision, to take "her share." No other provision of the will entitles the charitable fund to take. Consequently I am of the opinion that Mary's surviving son was intended to take the remainder interest in her share. The

same principle should apply to the other shares, the interest of the charitable fund depending upon a failure of heirs in the descending line surviving the life beneficiary of the particular share. The contrary view, to my thinking, nullifies the purpose of the quoted provision of Clause XIII (b).